# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **v.** ) | |
| ) | **Criminal Action No. 2012-0012** |
| **ELVIN WRENSFORD and** ) | |
| **CRAIG MULLER,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**Attorneys:**
**Alphonso G. Andrews, Esq.,**
St. Croix, U.S.V.I.
    *For the United States*

**Patricia Schrader-Cooke, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Elvin Wrensford*

**Martial A. Webster, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Craig Muller*

## MEMORANDUM OPINION

**Lewis, District Judge**

    THIS MATTER comes before the Court on appeals by Defendants Elvin Wrensford (Dkt. No. 22) and Craig Muller (Dkt. No. 19) of a Detention Order entered by the Magistrate Judge of this Court on June 19, 2012. (Dkt. No. 18). For the reasons discussed below, the Court will deny Defendants' appeals.

# I. BACKGROUND[1]

### A. The Incident

On May 10, 2012, at approximately 8:00 p.m., a shooting occurred in the vicinity of Food Town/Gulf Coast Custom Kitchens in Christiansted, St. Croix, Virgin Islands. Virgin Islands Police Department ("VIPD") Officer Richard Matthews conducted an investigation of the shooting and provided an Affidavit in Support of the Arrest and Detention in District Court of Defendants Elvin Wrensford and Craig Muller. (Dkt. Nos. 2-1 and 3-1). In his Affidavit, Officer Matthews stated that an autopsy revealed that the victim, Gilbert Hendricks, Jr., died from two gunshot wounds to the head. Two "slugs" were removed from the victim's head: one—a .40 caliber projectile; and the other—consistent with a 9 mm projectile. Several spent 9 mm and .40 caliber casings were found at the scene of the shooting. *Id.* at 2.

The Matthews Affidavit also summarized statements from four witnesses. Witness One ("W1"), interviewed at the scene, heard several shots discharged from a red truck occupied by two black males. It appeared to WI, from the sound of the gunshots, that two different firearms were discharged. *Id.* When the victim fell to the ground, the passenger in the truck continued to shoot at him, and W1 was able to observe the shooter's face. Later that evening, when W1 arrived at the police station to give a formal statement, W1 observed Defendant Wrensford leaving the police station and identified him to the VIPD as the shooter. *Id.* at 2-3. W1 identified a photograph of a red truck (recovered after the incident by the VIPD) as resembling the truck used in the crime. *Id.* at 3.

---

[1] The Court bases the background factual discussion on the record established at the detention hearing and on the filings before the Court. The Court provides this information solely for the purposes of this pretrial motion, ever mindful that Defendants are presumed innocent until proven guilty. The facts discussed herein are alleged; they are not conceded or proven beyond a reasonable doubt to the factfinder.

Witness 2 ("W2"), also interviewed at the crime scene, corroborated W1's observations and identified Defendant Muller from a photo array as the driver of the truck. W2 stated that s/he had seen Defendants Wrensford and Muller together on numerous occasions. *Id.* at 4.

Witness 3 ("W3") told the police that s/he observed Defendants Wrensford and Muller drinking at Ben's Car Wash, located a short distance from the crime scene, at 4:30 p.m. on the day of the shooting. They left at approximately 6:00 p.m. W3 stated that a man arrived at the car wash, along with the victim, and told W3 about an altercation he had with Defendants Wrensford and Muller earlier that afternoon. After that conversation, the male individual and the victim left. Later, the victim returned alone. According to W3, a red truck appeared and someone stated: "That's Elvin and Craig in the truck." The victim started to run. The truck turned around and followed the victim while the passenger discharged shots at him. *Id.*

Witness 4 ("W4") observed Defendants Wrensford and Muller arguing with someone earlier that afternoon at the car wash. The Defendants left the car wash in Defendant Muller's vehicle. Later, W4 "observed a red truck appear at the Car Wash and fired shots at the Victim," who was trying to run away. *Id.* at 5.

In his Affidavit, Officer Matthews stated that the VIPD apprehended Defendant Wrensford, traveling on foot, one hour after the incident approximately one and one-half miles from the crime scene. The VIPD recovered a 9 mm firearm with an empty magazine approximately five feet from where Defendant Wrensford was apprehended. The officers also recovered a red GMC truck about two miles from the crime scene, and half a mile from the area where Defendant Wrensford was apprehended. A key and insurance papers for the truck were found in Defendant Wrensford's possession. *Id.* at 3. Forensic analysis showed that the 9 mm shells recovered from the crime scene, and the 9 mm shells recovered from the bed of the GMC truck, were fired from the recovered firearm. Forensic analysis also showed that .40 caliber

3

shells recovered from the crime scene and from the bed of the truck were fired from the same firearm. *Id.* at 3-4.

The Matthews Affidavit also provided that, on May 17, 2012, Immigration & Customs Enforcement ("ICE") Agents observed Defendant Muller at the International Airport in San Juan, Puerto Rico. They advised him that the Virgin Islands Attorney General wished to question him about the homicide, and presented him with an in-house subpoena issued by the Department of Justice, Office of the Attorney General. *Id.* at 5. Officer Matthews determined that Defendant Muller had purchased a one-way ticket to New York on May 16, 2012. *Id.*

### B. Procedural History

Defendant Wrensford was arrested on May 11, 2012, and advised of his rights in the Superior Court of the Virgin Islands on May 14, 2012. Defendant Muller was arrested on May 17, 2012 when he returned to St. Croix. *Id.* Defendants Wrensford and Muller were charged in Superior Court on May 18, 2012 with five local charges, including first degree murder and firearms charges. Defendant Muller first appeared in Superior Court the same day for an advice of rights hearing. (Dkt. Nos. 27-1 and 27-4; Dkt. No. 33 at 1-2). A bail hearing was held on May 21, 2012. (Dkt. No. 27 at 2; Dkt. No. 27-4). Defendants were released on conditions, including house arrest and electronic monitoring. (Dkt. No. 2-1). The mothers of each Defendant served as their respective third-party custodians, and posted property bonds. On June 6, 2012, Defendants entered pleas of not guilty. (Dkt. 27 at 3).

On June 11, 2012, a five-count Information was filed in District Court against Defendants, charging: (1) possession of a firearm in a school zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(1)(B) (Count 1-both Defendants); (2) possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (Count 2-Defendant Wrensford only); (3) possession of a firearm with an altered identification mark, in

4

violation of 23 V.I.C. § 481(b) (Count 3-Defendant Wrensford only); (4) unauthorized possession of a firearm, in violation of 14 V.I.C. § 2253(a) (Count 4-both Defendants); and (5) first degree murder, in violation of 14 V.I.C. §§ 922(a)(1) and 923(a) (Count 5-both Defendants). (Dkt. No. 1).

On June 12, 2012, the District Court issued arrest warrants for the Defendants. (Dkt. Nos. 2, 3). On June 14, 2012, a preliminary hearing was held in District Court, during which the United States (the "Government") moved to detain the Defendants. (Dkt. No. 5). At a June 18, 2012 detention hearing, the mothers of each Defendant requested appointment as their respective son's third-party custodian, testifying that they were willing to post property bonds. (Dkt. No. 43 at 12-13, 20-21). Ms. Velda Wrensford testified that her family moved to St. Thomas, Virgin Islands in 1987 when her son was two years old, and then moved to St. Croix in 1996. She further testified that her son has lived with her since 2002; he does not have a criminal record; he had been laid off from Cruzan Environmental Services, where he had worked for four years; and he has a girlfriend who lives on St. Croix, with whom he has two children. *Id.* at 13, 14, 16, 17. Ms. Myra Williams Muller testified that her son, who was born on St. Croix, lives with the mother of his three children on St. Croix, and that he was employed by Innovative Communication Corporation. *Id.* at 19-20. Ms. Muller also testified that the reason that Defendant Muller was in Puerto Rico on May 17th—the day on which he was approached by ICE Agents—was because he had been sent home sick from work, and she had encouraged him to go to New York to see a doctor. *Id.* at 27.

On June 18, 2012, the Magistrate Judge of this Court issued an Order Finding Probable Cause and bound over the Defendants for further proceedings. (Dkt. No. 17). The Magistrate Judge issued an Order of Detention on June 19, 2012. (Dkt. No. 18). While acknowledging that the Defendants had demonstrated ties to the jurisdiction and had proposed willing third-party

5

custodians, the Magistrate Judge concluded that "[b]ecause of the nature of the charges and the strong evidence against them . . . no conditions exist, at this time, that would reasonably ensure the safety of the community. Accordingly, the Court has no choice but to detain them prior to trial." *Id.* at 5.

Defendants filed the instant appeals of the Magistrate Judge's Detention Order. (Dkt. Nos. 19, 22).

## II. DISCUSSION

### A. Pretrial Detention Standard

Under the Bail Reform Act, 18 U.S.C. §§ 3141-3156, pretrial detention of a criminal defendant will be ordered only if, after a hearing upon motion by the Government, "a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). In making its determination of whether any conditions of release can reasonably assure a defendant's appearance and the safety of others, the Court must consider the factors set forth in 18 U.S.C. § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on

> probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142 (g). "To justify pretrial detention, the [G]overnment must establish risk of flight by a preponderance of the evidence, and dangerousness by clear and convincing evidence." *United States v. Kanawati*, 2008 WL 1969964, at *2 (D.V.I. May 5, 2008) (citing, *e.g., United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986) and *United States v. Traitz*, 807 F.2d 322, 324 (3d Cir. 1986)).[2]

In *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985), the Third Circuit determined that 18 U.S.C. § 3145(b) contemplates a *de novo* review by the district court of the issues raised on an appeal of a magistrate judge's detention order. Nevertheless, the reasons articulated by the magistrate judge for or against detention must be given "respectful consideration." *United States v. Suppa*, 799 F.2d 115, 120 (3d Cir. 1986) (quoting *Delker*, 799 F.2d at 1400). The district court may make its independent determination based solely on the evidence introduced at the hearing before the magistrate judge. *Delker*, 757 F.2d at 1395. Alternatively, the reviewing court has the discretion to conduct an evidentiary hearing to aid in its *de novo* review, although it is not required to do so. *Kanawati*, 2008 WL 1969964, at *2 (citing cases).

---

[2] A number of cases in this District have held that "[r]isk of flight and danger to the community are 'distinct statutory sources of authority to detain,' and proof of one ground for detaining a defendant 'is quite enough,' making any discussion of the other ground 'irrelevant.'" *Kanawati*, 2008 WL 1969964, at *2 (quoting *United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985)); *accord United States v. Richardson,* 2009 WL 2044616, at *3 (D.V.I. July 9, 2009); *United States v. Peterson*, 2009 WL 1514402, at *3 (D.V.I. May 29, 2009); *United States v. Tyson*, 2008 WL 4415298, at *2 (D.V.I. Sept. 23, 2008); *United States v. Alexander*, 2007 WL 3391417, at *2 (D.V.I. Oct. 26, 2007); *see also United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988); *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985); *United States v. Cole,* 715 F. Supp. 677, 679-80 (E.D. Pa. 1988); *United States v. Kouyoumdjian*, 601 F. Supp. 1506, 1508-10 (C.D. Cal. 1985).

## B. Analysis

In analyzing the factors to be considered in deciding whether to order pretrial detention, the Court has conducted a *de novo* review of the record in this matter, including the evidence presented at the June 18, 2012 hearing before the Magistrate Judge. Based on that review, the Court concludes that Defendants' appeals should be denied.

### 1. 18 U.S.C. § 3142(g) Factors

#### a. Nature and Circumstances of the Offenses Charged

Defendants are charged with extremely serious and violent crimes, including the premeditated murder of another human being and several felony firearms charges. In addition to the nature of the charges, the manner in which the victim was allegedly murdered—two gunshots to the head, together with the firing of shots even after the victim fell to the ground—is particularly violent and brutal. (Dkt. No. 3-1 at 2). That the incident occurred in a populated area serves only to compound the seriousness of the crimes charged. Thus, the nature and circumstances of the offenses charged raise substantial concerns about the safety of the community if the Defendants are not detained prior to trial. *See, e.g. United States v. Flanders*, 2010 WL 4054442, at *8 (D.V.I. Oct. 15, 2010) (holding that crime charged—murder—is a crime of violence, and was carried out with a firearm, with brutality, in the vicinity of a school, which militates in favor of detention); *United States v. Thomas,* 2009 WL 2996532, at *4 (D.V.I. Sept. 16, 2009) (stating that "users of firearms in commission of crimes of violence are dangerous in a very real sense" and holding that pre-trial detention was warranted); *United States v. Carey*, 578 F. Supp. 2d 190, 191-92 (D. Me. 2008) (firearms offenses are factors against release). Accordingly, the Court finds that this factor weighs in favor of detention.

### b. Weight of the Evidence

The Matthews Affidavit demonstrates that the Government appears to have a considerable amount of evidence against the Defendants.[3] The Affidavit includes four eyewitness accounts of the murder, which corroborate each other. One eyewitness identified Defendant Wrensford as the shooter and identified a photograph of the recovered red truck as resembling the truck used in the incident. The VIPD determined that the recovered red truck belonged to Defendant Wrensford, based on finding a key and insurance papers for the truck in his possession. (Dkt. No. 3-1 at 3). Another eyewitness identified Defendant Muller as the driver of the red truck. *Id.* at 4. In addition, two other eyewitnesses to the shooting placed both Defendants near the crime scene earlier that afternoon, and indicated that Defendants had an argument with a male individual, who was accompanied by the victim. *Id.* at 4, 5. One of the witnesses heard another person identify the two individuals in the red truck as "Elvin and Craig" immediately before the shooting incident occurred. *Id.* at 4. Defendant Wrensford was apprehended one and one-half miles from the crime scene within one hour of the crime and a 9 mm handgun was recovered five feet from where he was apprehended. Firearm shells recovered from both the crime scene and the bed of the recovered red truck were fired from the recovered 9 mm handgun. *Id.* at 3-4.

The foregoing establishes that the weight of the evidence offered by the Government is substantial. *See, e.g., Flanders*, 2010 WL 4054442, at * 8 (opining that where weight of evidence

---

[3] The weight of evidence factor may be satisfied by reliance on an affidavit. *See Kanawati*, 2008 WL 1969964, at *3 (finding that weight of evidence against defendant was strong because affidavit, which was "based on the interviews and other evidence . . . , describes in intimate detail the events alleged in the complaint.").

9

against defendant is substantial, that fact militates in favor of detention); *Kanawati*, 2008 WL 1969964, at *3 (same). The Court finds that this factor weighs in favor of detention.[4]

### c. History and Characteristics of the Defendants

Defendant Wrensford provided evidence of community and family ties at the detention hearing. His mother testified that he is a long-time resident of St. Croix; has resided with her since 2002; has a long-time girlfriend, with whom he has two children, all of whom live on St. Croix; and previously worked at Cruzan Environmental Services for four years, although he was laid off and is now unemployed. (Dkt. No. 43 at 13, 14, 16, 17). Ms. Wrensford also testified that she would serve as Defendant Wrensford's third-party custodian, and stated that she would post her home to guarantee Defendant's appearance at trial. *Id.* at 12, 15. Further, Defendant Wrensford has no criminal record. *Id.* at 13.

Defendant Muller also provided evidence of community and family ties. His mother testified that he was born and lives on St. Croix, and has a seven-year relationship with the mother of his three children, all of whom live on St. Croix. *Id.* at 18, 19. She stated that he had been employed by Innovative Communication Corp., but is now suspended from his job. *Id.* at 20, 24. She asserted that she was willing to serve as his third-party custodian and that she and Defendant Muller's grandmother would post their properties as a bond for his pretrial release. *Id.* at 20, 21. Defendant Muller adds that "the office of probation has conducted an investigation into the defendant's background and determined that he has meaningful ties to the community." (Dkt. No. 27 at 7). In addition, Defendant Muller has no criminal record. (Dkt. No. 3-1 at 1).

---

[4] In their briefs, both Defendants question the evidence against them. Defendant Wrensford states that the "eyewitness identification is questionable" because W1 saw only the side of the shooter's face and W2's identification occurred after W1 had identified the shooter. (Dkt. No. 33 at 5-6). Defendant Muller offers, in passing, the conclusory argument that the Government does not have "sufficient evidence to convict him of the charges." (Dkt. No. 27 at 9). These arguments do not negate the collective weight of the Government's evidence, nor do they alter the Court's conclusion that the weight of the evidence factor weighs in favor of detention.

Both Defendants further assert that they complied with the conditions set for their release by the Superior Court. This past conduct is relevant to the Court's consideration of the history and characteristics of the Defendants.

In view of the foregoing, the Court finds that this factor weighs against detention for both Defendants. *See United States v. Garcia*, 2007 WL 2825724, at *3 (E.D. Pa. Sept. 20, 2007) (finding that defendant's apparent strong ties to the community and absence of criminal history weigh in favor of release).

### d. Nature and Seriousness of the Danger to Any Person or the Community

The Government argues that the manner in which Defendants allegedly committed the crime—discharging multiple shots in a populated area, and continuing to shoot the victim when he fell to the ground—placed innocent bystanders in danger, appeared unprovoked by the victim and thus senseless, and demonstrated Defendants' "intent and ability to commit violent acts for no reason." (Dkt. No. 39 at 4). *See United States v. Allen*, 409 F. Supp. 2d 622, 632 (D. Md. 2006) (finding defendant, who was pointing a gun at the head of a person kneeling on the ground, was seriously dangerous). Moreover, the Government has suggested that the Defendants may have targeted the wrong person in the shooting—as the victim had merely accompanied the person with whom Defendants reportedly had an argument earlier on the day of the homicide. The individual with whom Defendants argued may likely be a Government witness and could be at risk of harm should Defendants be released prior to trial. *Id.* at 4-5. The Government also points out that an unrecovered .40 caliber firearm was used in the shooting. One or both Defendants may know the location of that firearm: it is in their "constructive possession." *Id.* at 5. *Cf. Garcia*, 2007 WL 2825724 at *4 (opining that the fact that a defendant may have access to a pistol registered to him weighs in favor of detention).

11

The Court finds the Government's arguments persuasive, and therefore concludes that this factor weighs in favor of detention.

   2. **Safety of the Community**

Having assessed the four factors under 18 U.S.C. § 3142(g), the Court finds that the Government has established, by clear and convincing evidence, that "no condition or combination of conditions will reasonably assure the . . . safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Notwithstanding that the history and characteristics of the Defendants—including their family and community ties, the absence of a prior criminal record, and their asserted compliance with the Superior Court-imposed conditions of release—weigh against detention, the Court finds that this factor does not outweigh the cumulative weight of the other three factors which weigh heavily in favor of detention—the nature and circumstances of the offense charged, the weight of the evidence, and the nature and seriousness of the danger to any person or the community that would be posed by Defendants' release. *See, e.g., United States v. Talbert*, 2011 WL 5153572, at *3 (W.D. Pa. Oct. 27, 2011) (finding that while history and characteristics factor weighed in favor of defendant, the remaining factors weighed heavily in favor of pretrial detention, and affirming magistrate judge's detention order); *United States v. Tyson*, 2008 WL 45745, at (E.D. Pa. Jan. 2, 2008) (opining that Third Circuit has found "community ties to be 'of limited weight' in the context of a case where other factors weigh heavily in favor of pretrial detention.") (citing *Delker*, 757 F.2d at 1396); *United States v. Alexander,* 2007 WL 3391417, at *3 (D.V.I. Oct. 26, 2007) (ruling that strong family ties are not dispositive in firearms case, given other relevant factors). The Court therefore affirms the Magistrate Judge's Order of Detention in which he found that "[b]ecause of the nature of the

charges and the strong evidence against them . . . no conditions exist, at this time, that would reasonably ensure the safety of the community." (Dkt. No. 18 at 5).[5]

### 3. Risk of Flight

Defendants also argue that the risk of flight analysis weighs in their favor and compels their release. Defendants emphasize that their family and community ties demonstrate that they are not at risk of flight, and that their mothers are willing to post property bonds and serve as their third-party custodians. They also assert that they complied with the conditions of release set by the Superior Court, and Defendant Muller adds that he returned voluntarily to St. Croix to face questioning by law enforcement officers. (Dkt. No. 33 at 5; Dkt. No. 27 at 6-8).

Even assuming that a risk of flight analysis is necessary, notwithstanding the Court's conclusion above that the Government has made the necessary showing of dangerousness,[6] the Court finds that the Government has shown by a preponderance of the evidence that Defendants pose a risk of flight because of the serious nature of the offenses with which they are charged and the severity of the penalties they face if convicted.

First degree murder—with which both Defendants are charged—carries a mandatory life sentence, while possession of a firearm with an altered identification mark—with which Defendant Wrensford is charged—carries a fifteen-year mandatory minimum sentence. *See* 14

---

[5] The fact that Defendants were released on conditions by the Superior Court has limited, if any, relevance to the assessment of whether detention should be authorized in District Court under the Bail Reform Act. The Matthews Affidavit indicates that, at the Superior Court bail hearing, the Attorney General did not object to the Defendants' request for release on bond, and "[t]here was no argument nor discussion regarding the facts of the case (*e.g.* strength of the evidence, danger to society, flight risk, etc.)"—essential factors in the analysis under the Bail Reform Act. (Dkt. No. 2-1 at 6). Defendant Wrensford agrees. *See* Dkt. No. 27 at 2 ("The Government did not oppose Defendant Wrensford's request for release on bail. There was no discussion or argument presented by the Government."). Consequently, Defendants' release on conditions by the Superior Court does not alter the Court's conclusion here, which is grounded in this Court's analysis of the particular factors that inform detention decisions under the federal Bail Reform Act.

[6] See footnote 2, *supra*.

V.I.C. § 923(a) ("Whoever commits murder in the first degree shall be imprisoned for the remainder of his natural life without parole."); 23 V.I.C. § 481(b) ("Whoever. . . possesses. . . any firearm . . . with altered or obliterated identification marks, in a public place, a residential area, a vehicle or any place where persons are gathered shall be imprisoned for not less than fifteen (15) years without parole."). The severity of these sentences, if Defendants are convicted, including the fact that they each face their "first serious imprisonment time," provides an incentive for Defendants not to appear at trial. *See Thomas*, 2009 WL 2996532, at *3 ("Although Defendants have ties to the jurisdiction and have offered third-party custodians, the Court takes into consideration the fact that Defendants face a significant period of incarceration if convicted. Community ties and third party custody is not sufficient to assure Defendants' appearance for trial, especially since Defendants face their first serious imprisonment time.") (citing cases); *United States v. Stein*, 2005 WL 3071272, at *7 (S.D.N.Y. Nov. 15, 2005) ("[T]he defendant has a substantial motive to flee given the severity of the sentence he may face in the event of conviction."); *United States v. Caraballo*, 47 F. Supp. 2d 190, 192 (D.P.R. 1999) ("[D]efendant is a 'risk of flight' because defendant potentially faces a life sentence and the risk of flight increases as the severity of [the] potential sentence increases."). The serious nature of the offenses charged and the severity of the penalties, if convicted, are compelling grounds for concluding that Defendants pose a risk of flight. Accordingly, the Court finds that the circumstances here warrant Defendants' detention under the Bail Reform Act.[7] The fact that

---

[7] Although the above-stated grounds are sufficient in themselves to support the risk of flight conclusion, it is worthy of note that Defendant Muller was about to board a plane in Puerto Rico for New York—having purchased a one-way ticket—when he was approached by ICE agents and advised that the "Virgin Islands Attorney General desired to question him regarding the May 10, 2012 homicide . . ." (Dkt. No. 3-1 at 5). The Court recognizes that Defendant Muller's mother testified that he was traveling to New York for a doctor's visit, and further that Defendant Muller in fact returned to the Virgin Islands to face questioning after being approached by ICE agents. Nevertheless, it remains undisputed that Defendant Muller was already off-island, in transit, with a *one-way ticket* to New York.

Defendants allegedly complied with the conditions of release in Superior Court over the course of a four-week period does not alter the Court's conclusion in this regard.

In sum, the Government has proved, by a preponderance of the evidence, that "no condition or combination of conditions will reasonably assure the appearance of the [Defendants] as required," pursuant to 18 U.S.C. § 3142(e)(1).

### C. Additional Arguments

#### 1. Waiver of Detention

Defendant Muller has raised additional arguments on appeal. He claims that because the prosecution "represents both federal and local authorities under our system of jurisprudence, the prosecution['s] first opportunity to request detention was May 18, 2012, the day of defendant's first appearance for trial." (Dkt. No. 27 at 5).[8] Accordingly, Defendant Muller maintains that the Government waived its right to seek detention in the District Court. This argument is unavailing.

Defendant Muller's first hearing before a judicial officer occurred in Superior Court on May 18, 2012, at which point he was charged with only local offenses. The federal Bail Reform Act provides that if a detention hearing is required, it "shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance." 18 U.S.C. § 3142(f)(2). The first issue, therefore, is the applicability of the Bail Reform Act to the Superior Court proceedings. However, Defendant

---

[8] Defendant Muller also contends that federal prosecution of the same or similar charges that he faces in the Superior Court, growing out of the same offense conduct, constitutes double jeopardy. Subsequent to filing his appeal of the Detention Order, the local charges against both Defendants were dismissed, thereby rendering this argument moot. *See* Dkt. No. 52. In any event, even if the local charges had not been dismissed, jeopardy would not have attached simply because charges had been filed in two jurisdictions. Jeopardy would have attached—thus creating a potential double jeopardy issue—only when a jury was empaneled and sworn in either the federal or state proceeding. *Yeager v. United States*, 557 U.S. 110, 129 (2009)). Such clearly was not the case here.

Muller's argument is devoid of any legal authority to support the proposition that the Bail Reform Act—and, in particular, § 3142(f)(2)—was the applicable law in the context of the May 18, 2012 Superior Court proceedings. *Cf. Tobal v. Virgin Islands*, 2009 WL 357975, at *3 (V.I. Feb. 11, 2009) (citing holding in *Browne v. Virgin Islands*, 2008 WL 4132233, at *9 (V.I. Aug. 29, 2008) that "the [Bail Reform Act] is not applicable to cases in the Superior Court except as provided for in Superior Court Rule 141" and that "the appropriate provisions of the [Bail Reform Act] merely guide trial judges with respect to the *release* of defendants pending trial, but not with respect to the *detention* of such defendants."). In addition, Defendant Muller fails to explain how his contention that "the prosecution represents both federal and local authorities" (Dkt. No. 27 at 5) applies to the Superior Court proceedings in which only local charges were filed and the prosecuting authority was the Virgin Islands Department of Justice. Accordingly, given the absence of Defendant Muller's citation to any authority for the applicability of the Bail Reform Act to the Superior Court proceedings and the absence of any connection of the federal prosecutors to those proceedings, Defendant Muller's argument that the federal prosecutors waived their right to seek detention in District Court by not doing so in the Superior Court proceedings must fail.

Even assuming that Defendant Muller could establish the applicability of the Bail Reform Act to the Superior Court proceedings, and that the Government violated that Act by failing to move for detention in the Superior Court, Defendant Muller nonetheless acknowledges that the Government would *not* have waived its ability to therefore move for detention. (Dkt. No. 27 at 4). As Defendant Muller concedes, in *United States v. Montalvo-Murillo*, 495 U.S. 711 (1990), the Supreme Court held that "a failure to comply with the first appearance requirement does not defeat the Government's authority to seek detention of the person charged." *Id.* at 717; *see* Dkt. No. 27 at 4. The Supreme Court rejected the argument that a mere violation of the timing

16

requirements of § 3142(f) could or should result in the release of a person who should otherwise be detained unless "some combination of procedural irregularities" would render the detention hearing so flawed as to not constitute "a hearing pursuant to the provisions of subsection (f) for purposes of § 3142(e)." *Id.* The failure to comply with the first appearance requirement does not rise to such a level. *See id.* (opining that "[a] failure to comply with the first appearance requirement, however, does not so subvert the procedural scheme of § 3142(f) as to invalidate the hearing."). Therefore Defendant Muller's argument would fail even if the Government had violated the first appearance requirement by not moving for detention at the Superior Court hearing.[9] The Court rejects Defendant Muller's argument on this ground as well.

### 2. Ineffective Assistance of Counsel

Defendant Muller also claims that being housed in the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico will create an undue burden on him and his counsel. He asserts that the time and expense required for counsel to travel from St. Croix to Puerto Rico to consult with him will "likely . . . result in ineffective assistance of counsel." (Dkt. No. 27 at 10).[10]

---

[9] In *Montalvo-Murillo*, the Supreme Court indicated that once the Government discovers it did not comply with the first appearance requirement, it should promptly seek a detention hearing. 495 U.S. at 711. The Court also opined that it could be "conceivable that some combination of procedural irregularities could render a detention hearing so flawed" that it would not comply with the statute. *Id.* at 717. Defendant Muller claims that *Montalvo-Murillo* permits only brief, good faith, or inadvertent delays in holding detention hearings; if the delay is inexcusable, in bad faith, prejudicial, or extreme, sanctions of some form would be appropriate. (Dkt. No. 27 at 5). However, Defendant Muller offers no argument or evidence that this latter situation is the case here.

[10] In particular, Defendant Muller asserts that: (1) counsel will have to expend wasted travel time to and from Puerto Rico to consult with defendant, consuming an average of six hours and therefore leaving little time to meet and consult with Defendant; (2) the cost to counsel in time and resources is taxing; and (3) detention in Puerto Rico is burdensome and onerous on both Defendant and counsel. (Dkt. No. 27 at 10).

This Court rejected a similar argument in *United States v. Allick*, 2012 WL 32630 (D.V.I. Jan. 5, 2012). Noting that "[a] defendant bears the burden of establishing that he has been deprived of the effective assistance of counsel," *id.* at *3 (citing *Premo v. Moore*, 131 S. Ct. 733, 739 (2011)), the Court found that the defendant had not

> met his burden of demonstrating that the distance and alleged inconvenience of travel to and from MDC Guaynabo faced by his attorney has effectively deprived him of his Sixth Amendment right to counsel. . . . Defendant has not shown that he has been prevented from meeting with his counsel or that his detention at MDC Guaynabo has interfered with his legal proceedings.

*Id.* at *4. The Court observed that the practice of law on St. Croix "occasionally, if not frequently, requires off-island travel," that numerous daily flights are available from St. Croix to Puerto Rico, and found that counsel's travel to Puerto Rico did not "rise to the level of inconvenience that constitutes an unreasonable burden on Defendant's right to counsel." *Id.*

Here, Defendant Muller has made no showing that his detention at the MDC in Puerto Rico has resulted in his counsel's constitutionally deficient performance, pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Indeed, Defendant Muller phrases this argument speculatively: that his counsel's travel to Puerto Rico "is *likely* to result in ineffective assistance of counsel." (Dkt. No. 27 at 10). This is a far cry from satisfying the burden that Defendant Muller bears in establishing a constitutional deprivation of his right to counsel.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the Government has made the requisite showing to support the Magistrate Judge's finding that "[b]ecause of the nature of the charges and the strong evidence against them . . . no conditions exist, at this time, that would reasonably ensure the safety of the community." (Dkt. No. 18 at 5). The Court also finds that the Government has made the requisite showing to establish that "no condition or combination of conditions will reasonably assure the appearance" of Defendants as required. 18 U.S.C. §

18

3142(e)(1). Accordingly, the Court will deny Defendants' Appeals of the Magistrate Judge's June 19, 2012 Order. The Court will also deny Defendant Muller's request for a new detention hearing. An appropriate Order accompanies this Memorandum Opinion.

Date: December 4, 2012  _____/s/_____
WILMA A. LEWIS
District Judge